FILED

2007 Oct-22  PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

JOHN L. HUFF III,                    )
                                     )
         Plaintiff,                  )
                                     )
v.                                   )          Civil Action No. CV-06-CO-0439-W
                                     )
CITY OF TUSCALOOSA, et al.,          )
                                     )
         Defendants.                 )

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration the motions for summary judgment filed on May 14, 2007, by defendants Ken Swindle ("Swindle"), the City of Tuscaloosa ("the City"), and the Civil Service Board of Tuscaloosa ("the Board"). (Docs. 46, 48.) Plaintiff, John L. Huff, sued Defendants alleging that the Board's failure to promote him to the position of Police Sergeant was in retaliation for his engagement in protected activities. (Doc. 52 at 1.) Specifically, Huff alleges that he was not promoted in retaliation for repeatedly complaining about discriminatory practices allegedly committed by the Tuscaloosa Police Department ("TPD"). *Id.*

Plaintiff pursues his claims against the City of Tuscaloosa's Chief of Police, Ken Swindle, in his individual capacity, under 42 U.S.C. § 1981 ("§ 1981") and 42 U.S.C. § 1983 ("§ 1983").  (Doc. 30 ¶ 4.)  Plaintiff also claims that both the City and the Board violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), § 1981, and § 1983.[1]  (Doc. 44 at 34.)

The issues raised in Defendants' motions for summary judgment have been briefed by both parties and are now ripe for consideration.  Upon full consideration of the legal arguments and evidence presented by the parties, Defendants' motions for summary judgment are granted.

---

[1]Initially, Plaintiff also alleged claims of race discrimination against the defendants but he chose to dismiss those claims during discovery in this matter. Plaintiff's Second Amended Complaint also made reference to a failure to promote in June 2004, but there is no evidence that any promotions took place at that time; therefore, this claim is dismissed without further discussion.

II.    Facts.[2]

Plaintiff, an African-American male, has worked for the TPD since October 1990.  (Doc. 52 at 12.)  Throughout his sixteen year career, Plaintiff has served exclusively as a Police Patrol Officer.  *Id.*  In both October 2004 and March 2005, Plaintiff sought and was denied promotion to the rank of Police Sergeant.  *Id.* at 14.  Seven total vacancies were filled for the position during the October 2004 and March 2005 promotions.  *Id.*  While employed with the TPD, Plaintiff filed EEOC charges alleging discrimination on the basis of race and retaliation in September 2002, July 2003, December 2004, and March 2005.  *Id.*  He also filed internal grievances with the TPD and the City in September 1994, June 2002, August 2002, September 2003, and March 2005.  *Id.*

It is against TPD policy, City regulation, and federal law to use the filing of EEOC charges against an officer when evaluating that officer for

---

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

advancement.  (Doc. 45 at 4.)  All TPD employees involved with the relevant promotion processes knew that the filing of internal grievances or EEOC charges should not be used against a candidate for advancement and that doing so would constitute retaliation.  *Id.*

In 1947, before the enactment of Title VII, the Alabama legislature withdrew from the City the power to make certain employment decisions regarding most of the City's salaried employees.  Ala. Acts No. 247, pp. 174-181 (1947) (hereinafter "the Act").  (Doc. 47 at 2.)  The legislature gave this power to an independent three-person board whose members are appointed by the Governor of the State of Alabama.  *Id.*  The legislature named the board it created "The Civil Service Board of Tuscaloosa" and it is an arm of the State of Alabama.  *Id.*  The position of Police Sergeant is a civil service position, subject to the Act.  *Id.*  By its language, the Act gives the Board the exclusive authority to make promotions from Patrol Officer to Sergeant and requires that all promotions be based on merit.  *Id.* at 3.

To be eligible to participate in the process for promotion to Police Sergeant, a candidate must have served at least three years as a Police Patrol Officer.  *Id.*

A.    Promotion Process.

The process leading to the promotion decision involves three phases: the primary phase, the recommendation phase, and the decision phase.

1.    Primary Phase.

In the primary phase of the promotion process, candidates undergo a written examination and an evaluation called an "assessment center."  (Doc. 47 at 3.)

Prior to the administration of the primary phase, members of Tuscaloosa's Human Resources Department, called Subject Matter Experts, meet with TPD representatives to identify new issues and key responsibilities/traits that are required for the position being assessed. (Doc. 45 at 5.)  Once the job analysis is completed, exercises are developed and approved by the TPD to be used in the assessment center.  *Id*. at 6.

In the assessment center, candidates are put through a series of exercises, interviews, and tests.  *Id*.  This process is designed to assess the candidates' knowledge, skills, and abilities in areas that have been determined as essential to the successful performance of the applicable position.  *Id*.  Candidates are observed and scored, based on objective

criteria, by a group of trained assessors from outside the TPD who do not know the candidates they evaluate.  *Id.*

The candidates are then ranked on a "Promotion Eligibility Roster" based on a combination of their seniority, their written examination score, and their assessment center score.  (Doc. 47 at 4.)  This Promotion Eligibility Roster remains in effect for two years.  *Id.*

2.    Recommendation Phase.

In the second phase of the promotion process, Swindle recommends to the Board the candidate that he believes is most qualified for the promotion.

To guide the process of making this recommendation, the Board has issued guidelines utilizing a process called the "Band of Five."  *Id.*  Under the Band of Five process, the Department Head (Swindle) may recommend any person remaining among the top five candidates on the Promotion Eligibility Roster at any given time.  *Id.*  The top five candidates from the Promotion Eligibility Roster are called the Certified Roster of Candidates ("Certified Roster") or Band of Five.  *Id.*  The filling of the vacancy must come from the

Certified Roster.[3]  *Id.*

Once the Certified Roster is created, Swindle evaluates the candidates based upon an established set of criteria provided by the Board.  (Doc. 45 at 7.)  The October 2004 and March 2005 promotions were governed by the Board's Promotion and Procedure Guidelines ("the Guidelines") dated November 19, 2003.  (Doc. 52 at 14.)

Swindle has delegated the evaluation of the Certified Roster to a five-person panel called the "Promotion Panel."  (Doc. 45 at 7.)  This panel is made up of two Assistant Chiefs and three other senior officers selected by the Assistant Chiefs.  *Id.*  Swindle is not a member of the Promotion Panel and does not attend its meetings.  (Doc. 47 at 6.)  The members of the Promotion Panel, during the relevant time, were Captain L. G. Lowery, an African-American female; Lieutenant A. Smith, an African-American male; Lieutenant K. Miksis, a Caucasian male; Chief R. Dunn, an African-American male; and Assistant Chief M. Tubbs, a Caucasian male.  (Doc. 47 at 15.)  The

---

[3]If, for example, there are two promotions to be made, the Police Chief first makes his selection for recommendation from among the Certified Roster, and then he would make his second selection for recommendation from those remaining in the top five and the person in sixth place who would move up into the Certified Roster.

Promotion Panel evaluates the candidates on the Certified Roster in the areas of: (1) education, (2) attendance and punctuality, (3) discipline, (4) equipment proficiency, (5) preparation and review of written documents, (6) cooperation with co-workers, (7) personal appearance, (8) adherence to chain of command, and (9) support of department changes in policy and procedure. *Id.* at 6. At this stage, each candidate is scored on a scale from zero to five in each category with the minimum score being a zero and the maximum score being a five. *Id.* According to the Guidelines, discipline evaluation is limited to formal discipline in the preceding two year period; therefore, discipline prior to that period is not considered by the Panel. (Doc. 45 at 7.) The Promotion Panel's cumulative scores are then used to rank the candidates. (Doc. 47 at 6.) The candidates with the highest scores constitute the Panel's recommendation. *Id.*

The next phase of the recommendation process involves the two Assistant Chiefs' joint recommendation to the Chief of Police. *Id.* at 7. In making this joint recommendation, the Assistant Chiefs consider additional information including supplemental information provided by the candidates, the special needs associated with a particular sergeant position, the special

skills of the particular candidate, the candidate's entire disciplinary record, and the candidate's entire work history.[4]  *Id.*

After receiving the Assistant Chiefs' recommendations, Swindle then decides which candidate or candidates to recommend and he reports his recommendations to the Board.  *Id.*  In making his recommendation, Swindle is allowed by the Guidelines to consider additional criteria which he finds relevant to the position.  (Doc. 55, Ex. 11 at 3.)

> 3.     Decision Phase.

The third and final phase of the promotion process involves the actual promotion decision which is made by the Board.

At this stage in the promotion process, the Board conducts a hearing where it receives evidence from multiple sources.  (Doc. 47 at 7.)  The Board conducted promotion hearings in both October 2004 and March 2005 (collectively referred to as "promotion hearings").   At the promotion

---

[4]In Plaintiff's Response to Defendants' Summary Judgment Statement of Facts (Doc. 52), Plaintiff claims that this fact is in dispute.  Defendant offered the affidavits of both Ken Swindle and Assistant Police Chief Ronnie Dunn to support this fact.  In Plaintiff's response, he simply replied that the fact is "disputed" without referencing any portions of the evidentiary record.  Based on Plaintiff's lack of support, the Court deems this fact undisputed for summary judgment purposes.

hearings, Defendants claim that the Board reviewed Swindle's recommendations and information provided from the City's Human Resource Department, as well as the results from the primary phase of the process, such as the examination and assessment center scores. *Id*. at 8. Plaintiff contends, however, that only the candidates recommended by Swindle were discussed and considered by the Board.

Candidates are allowed to be present at the hearings and they have the ability to submit evidence to the Board.[5] *Id*. The Board also requires Swindle to present justification for the candidates that he recommends for the promotions. (Doc 47 at 8.) The Board then deliberates outside the presence of Swindle or any other members of the TPD before reaching its decision. (Doc. 47 at 8.) The promotion decision is typically announced within a few weeks of the Board's hearing. *Id*. When the Board returned

---

[5]Plaintiff claims that candidate attendance at the Board meetings is not found in the Guidelines and was not testified to by the Human Resource Director Brian Butler. Further, he claims that nowhere in the Board minutes does it reflect that any candidates were interviewed. However, Brian Butler testified in his deposition that the Board's meetings are generally open to the public. Also, Wallace Lancaster stated that candidates could attend the meetings and present evidence. The fact that no candidates showed up to present testimony does not mean that they did not have the opportunity to do so; therefore, this fact is accepted for summary judgment purposes.

with its decisions in October 2004 and March 2005, all seven of the candidates recommended by Swindle were chosen to receive the promotions. *See* Doc. 47, 52.

       B.    October 2004 Sergeant Promotions.

The 2004 promotion examination process was announced and posted on November 20, 2003.  (Doc. 52 at 19.)  As required by the Guidelines, a written examination was given and an assessment center was performed.  *Id*. Plaintiff scored a 66 on the written examination, which was less than each of the candidates ultimately selected for recommendation by Swindle.[6] (Doc. 47 at 14.)  He scored an 85.3 in the assessment center process, placing him above two of the four successful candidates.  *Id*.  After taking into account seniority, at the conclusion of the primary selection process Plaintiff was ranked third out of twenty-seven potential candidates.  (Doc. 52 at 20.)

On August 2, 2004, a Promotion Panel was convened to evaluate the candidates on the Promotion Eligibility Roster.  *Id*.  Three of the five members of the Promotion Panel were aware that Plaintiff had filed EEOC

_____

[6]By comparison, the officers who received promotions scored the following on the written examination:  D.H. Clark - 90; B.L. Castleberry - 85; A.C. Kelly - 82; D.M. Whitney - 76; D.R. Wood - 75; S.J. Rice - 72; W. Robertson - 69.

charges when they made their evaluation and all of the members were aware that he had filed internal grievances in the past.  (Doc. 52 at 22, 33.)  In evaluating Plaintiff, the Promotion Panel determined that he should receive only a two out of five in the area of adherence to chain of command.  (Doc. 55, Ex. 22 at 11.)  Plaintiff claims that this was based on retaliatory animus for Plaintiff's engagement in protected activities.   (Doc. 54 at 11.) Defendants claim that Plaintiff received a lower score because he improperly filed at least two internal grievances which caused a delay in the grievances being processed.  (Doc. 59 at 6.)  The Promotion Panel denies assigning lower scores to Plaintiff, or any other candidate, with the intent to retaliate against candidates who participate in protected activity.  (Doc. 47 at 16.) Plaintiff received a cumulative score of 57.08 from the Promotion Panel, which was below the scores of each of the candidates who ultimately received recommendations for the promotion by Swindle.  *Id.*

According to Swindle, he only considers the candidate from each Band who receives the top score from the Promotion Panel and Plaintiff was not one of the top four candidates according to the Panel's numerical rankings. (Doc. 52 at 24.)  According to Swindle, there was no discussion of Plaintiff

during his review of the Promotion Panel's evaluations. *Id*.  The only candidates discussed were the four candidates who were eventually recommended for promotion to the Board.  *Id*.

Regardless of Plaintiff's scores, as early as 1997, Swindle claims that he had decided that Plaintiff was not qualified for promotion to Sergeant. (Doc. 47 at 18.)  He based this belief on Plaintiff's disciplinary record, which Swindle claims is worse than any other police officer in the TPD, and the fact that Assistant Chief Wilkins had previously made a written recommendation that Plaintiff be discharged.[7]  *Id*.

The issue of Police Sergeant promotions was discussed by the Board during its meeting on October 19, 2004.  (Doc. 47 at 18.)  At the meeting, Swindle was required to justify his recommendations and explain how the candidates would fit into the department's organizational plan.  *Id*. at 19. The information Swindle provided to the Board included the following:

---

[7]Following an incident in February 1997, involving a minor that Plaintiff ejected from the Bama Theater, Assistant Chief Billy Wilkins recommended to Swindle that Plaintiff be discharged based on his disciplinary record.  Pursuant to Wilkins' recommendation, charges against Plaintiff were brought before the Board where Swindle requested that Plaintiff be discharged.  The Board ultimately determined that a thirty-day suspension was the appropriate punishment.

Officer D.H. Clark has served as a Field Training Officer, a member of the Special Response Team, the "Charlie Detail," and the Honor Guard, and has assisted the training division in training officers at the department and at the academy.

A.C. Kelly was graded as exceeding the standards in seven out of the nine categories. He has better than average scores in criminal investigations experience. He has been our department polygrapher since 2001.

Officer Wayne Robertson has vast knowledge of narcotics laws through his years of working narcotics. His immediate supervisor gave him high marks as a team player and he has demonstrated good leadership qualities. He has been involved in several major cases.

Officer D.H. Whitney has voluntarily provided the federal government with written justification under the 10-33 grant program, which has enabled the department to receive over $100,000 worth of equipment. Whitney also researched and wrote the Police Department's policy and lesson plan on active shootings. He also has been a member of the Special Response Team and a firearms instructor, and has broad experience in criminal enforcement and patrol.

*Id.*

The Board also received information from other sources regarding each of the candidates.   (Doc. 47 at 20.)   This information included their examination scores and assessment center scores.[8]  *Id.*  After receiving this

_____

[8]In Plaintiff's Response to Defendants' Summary Judgment Statement of Facts (Doc. 52), Plaintiff claims that this fact is "disputed" based on his assertion that it

evidence, Board member Lancaster stated that the Board deliberated at

length in private, and made the decision to promote D.H. Clark, A.C. Kelly,

W. Robertson, and D.M. Whitney. *Id.* at 20.  The Board minutes reflect that

the Board met with Swindle and "ratified and confirmed" the promotions.

(Doc. 55, Ex. 31.)  The members of the Board were not aware that Plaintiff

had taken part in any protected activity, prior to promoting Clark, Kelly,

Robertson and Whitney.[9]  *Id.*

    C.    March 2005 Sergeant Promotions.

On February 28, 2005, Swindle received a new Certified Roster of

Candidates because he sought to fill three additional Sergeant vacancies.

---

contradicted the statements of Butler, Swindle, and Dunn.  However, Plaintiff has failed
to present any evidence that the Board did not have the other candidates' written test
scores and assessment center scores, in addition to Swindle's recommendations.
Plaintiff merely refers to the deposition of Tuscaloosa Human Resources Director, Brian
Butler, who testified that no departmental files were produced **by the Human Resources
Department**.  Both Swindle and Dunn testified to a lack of knowledge regarding the
materials that the Board had in its possession at the hearings in question.  Civil Service
Board member Wallace Lancaster stated in his affidavit that the Board possessed such
information at their October 2004 hearing.  Defendant has failed to produce sufficient
evidence to create a dispute as to this fact, even when viewing the facts in the light
most favorable to the nonmoving party.

    [9]In Plaintiff's Response to Defendants' Summary Judgment Statement of Facts
(Doc. 52), Plaintiff claims to dispute this fact.  In his response, Plaintiff simply replied
that the fact is "disputed" without referencing any portions of the evidentiary record
that he claims contradicts the fact.  Based on this lack of support, this Court deems this
fact undisputed for summary judgment purposes.

(Doc. 52 at 28.)  That same day, he selected from the Certified Roster three candidates for recommendation to the Board.  *Id*.  This action violated the Promotion Guidelines which requires a re-evaluation of all candidates each time a new certified Roster is created.  *Id*.  According to Swindle, he used the August 2, 2004, Promotion Panel evaluations in making his selections for the 2005 Sergeant promotion recommendations.  *Id*.  He certified to the Board that his evaluations were done in accordance with the guidelines established by the Board, which was incorrect.  *Id*.  The officers recommended by Swindle and approved by the Board were B.L. Castleberry, D.R. Woods, and S.J. Rice.  *Id*.  Each of these officers scored higher than Plaintiff in the Promotion Panel's evaluations.

During the March 2005 Civil Service Board meeting, Swindle was required to justify his recommendations and explain how these candidates would fit into the department's organizational plan.  (Doc. 47 at 22.)  He provided the following information:

> Officer Castleberry has served as a member of the Traffic Division for several years.  With the retirement of Captain Lancaster, it is essential and it will be very beneficial to the Department to have Officer Castleberry's experience in the Traffic Division, especially based on his experience in riding

motor cycles.

Officer D.R. Wood, who has many years of experience as an investigator, is currently assigned to the Helicopter Unit. He has excelled in his flight training and continues to accumulate the required hours of flight time. He is an asset to the Department and the Helicopter Unit. He has demonstrated that he has the capability to be productive and I feel that he will be an asset as a Sergeant in the Helicopter Unit.

Officer S.J. Rice has vast knowledge of investigations because of assignment to the Criminal Investigation Division. He will be an asset in the Patrol Division. His experience and knowledge of criminal investigations, crime scene investigator and evidence procedures will benefit the Patrol Division.

*Id*.

Once again, each of Swindle's recommendations was accepted by the Board. The Board minutes reflect that the Board met with Swindle and "ratified and confirmed" the promotions. (Doc. 55, Ex. 36.) Plaintiff did not appeal either of the promotional decisions or file any EEOC charges against the Board. (Doc. 47 at 23.)

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute

is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *U.S. v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

Under Title VII, it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a); *see also Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997).  "To establish a prima facie case of retaliation, the plaintiff must show (1) that [he or] she engaged in statutorily protected expression; (2) that [he or] she suffered an adverse employment action; and (3) that there is some causal relation between the two events."  *Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994).  "The failure to satisfy any of these elements is fatal to a complaint of retaliation."  *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004).

The parties agree that the first two elements of the prima facie case are established, i.e., that Plaintiff engaged in statutorily protected conduct (filing internal grievances and EEOC charges) and suffered an adverse employment action (being denied promotions).  The dispute centers solely on whether Plaintiff presented sufficient evidence to create a genuine issue of fact such that a reasonable jury could find that Plaintiff was not promoted because of his participation in protected activities.

The Eleventh Circuit has interpreted the causal link requirement broadly; a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.  *EEOC v. Reichhold Chem., Inc.*, 988 F.2d at 1572; *see also Simmons v. Camden County Bd. of Ed.*, 757 F.2d 1187, 1189 (11th Cir. 1985).  "A plaintiff satisfies this element if he provides sufficient evidence" of knowledge of the protected expression and "that there was a close temporal proximity between this awareness and the adverse . . . action." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 n. 30 (11th Cir. 2003) (*quoting Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir. 1999)).

"A close temporal proximity between the protected expression and an

adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case." *Higdon,* 393 F.3d at 1220 (internal quotations omitted).  The Eleventh Circuit has held that a period as much as one month between the protected expression and the adverse action is not too protracted to be considered circumstantial evidence of causation.  *See Wideman* v. *Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998) (*citing Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986)); *Higdon,* 393 F.3d at 1220.

The Supreme Court has stated that "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action . . . must be 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  The Court cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection.  *Id.* (*citing Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient)).  "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint

of retaliation fails as a matter of law." *Higdon*, 393 F.3d at 1220.

In this case, Plaintiff filed EEOC charges alleging discrimination on the basis of race and retaliation in September 2002, July 2003, December 2004, and March 2005.  He filed internal grievances with the TPD and the City in September 1994, June 2002, August 2002, September 2003, and March 2005. The promotions that Plaintiff claims he would have received, but for these complaints, took place in October 2004 and March 2005.  While the EEOC charges and internal grievances filed in 1994, 2002, and 2003 would clearly be too remote to demonstrate causation, the December 2004 and March 2005 protected activities warrant review.

A closer examination of the December 2004 and March 2005 complaints reveals that Plaintiff was, in essence, complaining because he was denied the promotion to Sergeant.  *See* Doc. 55, Exs. 7, 8.  Plaintiff did not engage in protected activities within a "very close" temporal proximity to being denied the promotions.   Instead, Plaintiff's grievances related to his disagreement with the Board's decisions ***after*** the Board decided to promote other candidates.   The Court finds that these complaints do not assist Plaintiff in establishing causation with regard to decisions he contends were

acts of retaliation.

Since the proximity of the protected activity to the adverse employment action does not establish causation, the Court turns to the other evidence presented in the record to determine if Plaintiff has established a prima facie case of retaliation.  *See Higdon*, 393 F.3d at 1220.

A.    Swindle's Retaliation.

Huff alleges that Swindle's conduct throughout the October 2004 and March 2005 promotion processes establishes pretext such that a reasonable fact finder could infer a retaliatory motive from his decision not to recommend Plaintiff for the promotions.

In the recommendation phase of the promotion process, Swindle delegated his evaluation of the Certified Roster of Candidates to the Promotion Panel.  This panel evaluated all of the candidates based on their (1) education, (2) attendance and punctuality, (3) discipline, (4) equipment proficiency, (5) preparation and review of written documents, (6) cooperation with co-workers, (7) personal appearance, (8) adherence to chain of command, and (9) support of department changes in policy and procedure.  Plaintiff argues that based on the subjective nature of several

of these criteria, the Court should give higher scrutiny to the Panel's scores.

While Plaintiff argues that many of these criteria are subjective, he offers no evidence that the Promotion Panel's criteria were applied in an unfair manner against him, based on his engagement in protected activities. These criteria appear to be legitimate and non-retaliatory.  That some of them are subjective in nature does not make them any less legitimate without a showing of improper conduct by the Promotion Panel members.

Plaintiff's allegation that he was given lower scores in the "adherence to chain of command" criteria based on his internal grievances and EEOC complaints is likewise without merit.  Plaintiff asserts that "the Panel, based on [Assistant Police Chief Ronnie] Dunn's insistence, used Huff's filing of grievances against him by giving him a lower evaluation score." (Doc. 54 at 11.)  This assertion is not supported by the record even when viewing the facts in the light most favorable to Plaintiff.  It is undisputed that one of the criteria upon which each of the candidates was evaluated was entitled "adherence to chain of command."  Further it is undisputed that the fact that at least one of the grievances made by Plaintiff was incorrectly filed in the Human Resources Department, which resulted in a delay in it being

processed.  (Doc. 59. at 6.)  As a result, Plaintiff received a score of two (or

meets standards) for that criteria.   In the Panel's deliberations on the

"adherence to chain of command" criteria, Assistant Chief Dunn stated:

> Now there are some instances, personal opinion, that I personally
> know of where Huff has filed a grievance and this is one of my
> big issues with him.  Instead of following the chain of command
> he went strait to H.R. and it's going to take them a while to get
> to work back because those are within the last year or two, you
> know.   So I can't say that he always complies to chain of
> command because he does not, you know, if he feels he should
> send something straight up here he'll do it.  A lot of times we
> have to send it back down and say hey, send it to your Sergeant,
> Lieutenant or Captain and let it work its way back up here so he
> doesn't always follow chain of command properly, you know.

(Doc 55, Ex. 22 at 11.)  The remaining Panel members agreed with Chief

Dunn's assessment.   There is no evidence that this score was lowered in

retaliation for the actual filing of the grievance.   Instead, the evidence

shows that Plaintiff's score was lowered only because he filed at least one

of the internal grievances incorrectly.

Also, Plaintiff's disagreements with the scores assigned by the

Promotion Panel is not relevant to the Court's analysis.  *See Cooper v. S.*

*Co.*, 390 F.3d 695, 729-730 (11th Cir. 2004) (the issue is not what a plaintiff

believes in terms of his relative qualifications, but instead what the decision-

maker believed).   Plaintiff has not presented any evidence to create a material issue of fact that the Promotion Panel did not genuinely believe that the scores they assigned were accurate, and that Plaintiff was treated unfairly based on his protected activity.

It is also undisputed that Plaintiff's cumulative score of 57.08 from the Promotion Panel was lower than the scores of each of the seven candidates ultimately promoted by the Board.  Plaintiff was not scored lower than the successful candidates in every category.  Instead, he was scored higher than some successful candidates with regard to certain criteria, and lower with regard to others.  Moreover, Plaintiff's score of 57.08 was higher than the scores of two other unsuccessful candidates who had not engaged in protected activity.   In sum, there is no evidence the Promotion Panel decided to punish Plaintiff for filing internal grievances or EEOC complaints.

Plaintiff also attempts to call into question the Panel's findings by arguing that three of the five members of the Promotion Panel knew of his EEOC charges and all of the Panel members were aware of his internal grievances.  While this is true, Plaintiff has presented no evidence that the Panel members' knowledge in any way affected the manner in which the

evaluations were scored.

Plaintiff further cites that "Panel member Lt. Smith believed that Huff should not have been passed over for promotion to Sergeant" and that "Dunn told Huff if the decision had been his, he would not had (sic) made the same decision as Swindle did in regard to Huff."  (Doc. 54 at 12.)  However, the Promotion Panel's sole function was to evaluate and score the candidates with regard to the criteria in the Promotion Guidelines, not to make the recommendation to the Board, much less to make the actual promotion decision.  That members of the Promotion Panel may have favored Plaintiff for promotion obviously does not establish that the scores they assigned were intended to injure him in retaliation for engaging in protected activities.

Plaintiff has failed to adduce any evidence of pretext with regard to the Promotion Panel's evaluation of the Certified Roster of Candidates, which Swindle followed in making his recommendations to the Board. Nevertheless, Plaintiff contends that Swindle's withholding of his recommendation constituted an adverse employment action based on Plaintiff's engagement in protected activity.  Apparently, Plaintiff expected Swindle to recommend him over other officers, all of whom scored higher in

the Promotion Panel, and contends that it is retaliation when Swindle did not.

Plaintiff has been suspended from the police force on two occasions. Plaintiff's first suspension involved a violation of a direct order by Swindle. After hearing testimony on the matter, the Board concluded that the Plaintiff was guilty of "gross insubordination."  Plaintiff's involvement in a second incident led to a written recommendation from Assistant Chief Billy Wilkins to Swindle that Plaintiff be terminated as a liability risk.  Swindle brought these charges before the Board who later ruled that a 30-day suspension was the most appropriate punishment.  Nonetheless, since that time it is undisputed that Swindle has not deemed Plaintiff qualified for promotion to Sergeant.  Swindle's position predated the filings of all of Plaintiff's EEOC complaints and all but one of his internal grievances which he claims caused him not to be promoted.

Plaintiff attempts to contest Swindle's position by arguing that "according to established Guidelines, all such [discipline] incidents are not relevant" because they occurred more than two years ago.  However, a review of the Guidelines reveals that this argument misconstrues the

language of the Guidelines.  The Guidelines provide for the assessment of the nine criteria in connection with the process by which the Police Chief reaches a decision regarding his recommendations to the Board.  However, the Guidelines expressly state that Swindle, as the Police Chief may consider other criteria.  (Doc. 55, Ex. 11 at 3.)  Thus, Swindle was authorized to consider all relevant factors, including all of the remaining facets of a candidate's disciplinary record.  According to the scoring key used by the Promotion Panel, these additional criteria that the Chief identifies do not affect the score to be assigned by the Panel, but this does not preclude Swindle from taking it into account in deciding which candidates to recommend.

This is not inconsistent with Swindle's claim that he made his recommendations from those candidates with the highest numerical score from the Promotion Panel.  There were a total of only seven promotions available, and Plaintiff was not among the seven candidates who were scored highest by the Promotion Panel.  Given his longstanding belief about Plaintiff, it was consistent for Swindle to agree with the Promotion Panel that Plaintiff was not in the top seven in terms of qualifications.

Finally, Plaintiff argues that Swindle violated a provision in the Guidelines which required him to re-evaluate the remaining candidates before making his recommendations to the Board in March 2005. Plaintiff contends that this constituted a violation of "established rules" and thus is evidence of causation. This argument lacks merit. Plaintiff failed to address how this violation demonstrates that Swindle was retaliating against Plaintiff's participation in protected activity. Plaintiff admits that he was not the only candidate who was not re-evaluated before the March 2005 promotion. In fact, none of the candidates were re-evaluated before Swindle's second round of recommendations.

Plaintiff has not presented sufficient evidence such that a reasonable jury could conclude that Swindle's recommendation of other candidates, but not Plaintiff, constituted retaliation for Plaintiff's engagement in protected activities.

Furthermore, even assuming, *arguendo*, that Plaintiff has introduced enough evidence to allow a reasonable juror to find retaliatory animus by Swindle, the causal link between the animus and Plaintiff being denied the promotions is broken by the Board's hearings and independent decisions not

to promote him.

Under Alabama law, neither Swindle nor the City, has the power to promote or deny promotion to police officers such as Plaintiff.  Under the Act, only the Board has the power to do so.  "Consequently, [Swindle's] recommendation that the Board [promote other candidates] does not, itself, constitute a change in the terms or conditions of employment absent a sufficient causal link between the [failure to promote] and the discriminatory animus behind the recommendation." *Stimpson v. City of Tuscaloosa,* 186 F.3d 1328, 1331 (11th Cir. 1999).

"One way of proving that the discriminatory animus behind the recommendation caused the [failure to promote] is under the 'cat's paw' theory. This theory provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee." *Id.  See also Tucker v. Talladega City Schools,* 171 Fed. Appx. 289, 297 (11th Cir. 2006); *Tucker v. Housing Auth. of the Birmingham Dist.,* 229 Fed. Appx. 820, 823 (11th Cir. 2007).   "In such a case, the recommender is using the

decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." *Stimpson*, 186 F.3d at 1332.

In *Stimpson*, the Eleventh Circuit held that the Civil Service Board of Tuscaloosa's decision to terminate a civil service employee was an independent decision.  The Court noted that the Board had the sole power and discretion to terminate the employee, that the Board's members were appointed by the Governor, and that it conducted a three-day hearing on the matter in question.  The Court further declined to announce a bright line test for when an "independent" investigation becomes a "rubber stamp." *Id*. at 1332.

In this case, Plaintiff has failed to demonstrate that the Board did not conduct an independent investigation into the Sergeant promotions in October 2004 and March 2005.  The Board presented evidence that it received additional information regarding each of the potential candidates, beyond simply considering Swindle's recommendations.  This information included all of the potential candidates' written examination and assessment center scores.  Board member Wallace Lancaster stated that after receiving

evidence on the potential candidates, the Board "deliberated at length in private."

Plaintiff argues that the candidates other than those recommended by Swindle were "not discussed or considered by the Board." In support of this contention, Plaintiff cites the deposition testimony of the Director of Human Resources for the City of Tuscaloosa Brian Butler, Swindle, and Assistant Police Chief Ronnie Dunn. In reviewing these depositions, Butler testified that he *did not have any recollection* as to whether Plaintiff or other candidates were discussed by the Board in October 2004 and March 2005. (Doc 55, Ex. 12 at 85-96.) While he was not aware if the Board discussed any of the other candidates or if he provided them with additional documentation on the candidates, he did state that the Board had the list of all of the eligible candidates. *Id.* He also testified that when candidates are discussed, generally the Board deliberates in private, unless they request others to be in attendance. *Id.* Swindle testified that although he could not specifically recall being questioned by the Board about other candidates in the October 2004 and March 2005 meetings, he has been questioned

regarding non-recommended candidates in the past.  (Doc. 55, Ex. 13 at 141.)  Finally, Assistant Police Chief Ronnie Dunn testified that he could not recall if he was even in attendance at either of the promotion hearings by the Board.  (Doc. 55 Ex. 10 at 251-251, 336-338.)   Nothing from these depositions contradicts the statements of Lancaster that the Board had all of the candidates' examination and assessment center scores, and that the Board deliberated at length in private before reaching its decisions. Moreover, Plaintiff does not cite any statements from either of the other Board members to contradict that of Lancaster regarding the discussions and deliberation by the Board.

Finally, Plaintiff argues that the Board's use of the phrase "ratify and affirm the following promotions" in its minutes shows that the Board acted merely as Swindle's "rubber stamp," and that no private deliberations were held to discuss the other candidates.  This argument is without merit.  The Board's minutes do not address the details of the Board's decision-making process.  It is consistent that the Board members could have conducted a private discussion after meeting with Swindle and the minutes simply reflect

that the promotions were "ratified and confirmed."  The record is void of any evidence to suggest that the Board's use of the phrase "ratified and confirmed" shows that no discussion or deliberation took place, and Plaintiff has presented no evidence that Lancaster's account of the Board's actions during its meetings in October 2004 and March 2005 was inaccurate.

While the Board did not conduct a three-day hearing similar to that in *Stimpson*, the Eleventh Circuit has never ruled that a specific time limit creates a bright line test for when a decision is "independent," rather than a "rubber stamp."  The undisputed evidence shows that not only did the Board have all of the candidates' written test and assessment center scores, but also that they required Swindle to justify his recommendations.

The evidence also reveals that Plaintiff was the beneficiary of the Board's independence from Swindle during his career as a police officer. Following an incident in February 1997, Assistant Chief Billy Wilkins recommended to Swindle in writing that Plaintiff be discharged based on his disciplinary record.  Pursuant to Wilkins' recommendation, charges were brought against Plaintiff before the Board and Swindle recommended that

Plaintiff be discharged.   However, the Board did not follow Swindle's recommendation and instead imposed a 30-day suspension.   Clearly the Board is not simply a "rubber stamp" for Swindle.

Consequently, we hold that Plaintiff has failed to point to sufficient evidence to allow a reasonable jury to conclude Swindle's alleged discriminatory animus was the "cat's paw" which determined the Board's decision not to promote him.

B.    The Civil Service Board of Tuscaloosa.

Plaintiff alleges that the Board violated Title VII, § 1981, and § 1983 because it did not conduct an individualized inquiry or investigation into the promotion decisions but instead merely "rubber stamped" the recommendations of Swindle and the City.   (Doc. 30 at ¶ 16.)   In rubber stamping Swindle's recommendations, Plaintiff asserts that the Board ratified both Swindle's and the City's retaliatory conduct and/or delegated its decision-making authority to Swindle and the City.

Because we have held that there is not substantial evidence such that a reasonable jury could conclude that the Board acted as Swindle's "rubber

stamp," or for that matter Swindle retaliated against Plaintiff, Plaintiff must establish a prima facie case of retaliation against the Board in order to prevail on his claims of retaliation against it.  As discussed above, in order to "establish a prima facie case of retaliation, the plaintiff must show (1) that [he or] she engaged in statutorily protected expression; (2) that [he or] she suffered an adverse employment action; and (3) that there is some causal relation between the two events. *Meeks v. Computer Assoc. Int'l*, 15 F.3d at 1021.

In order to demonstrate that the protected activity and adverse employment action were not entirely unrelated, Plaintiff must generally show that the decision-maker was aware of the protected conduct at the time of the adverse employment action. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) ("In a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression . . ."); *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798-799 (11th Cir. 2000) (holding

"[a] decision-maker cannot have been motivated to retaliate by something unknown to him."); *Hudson v. S. Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir. 1988) (affirming grant of summary judgment to the defendant on retaliatory discharge claim where there was uncontradicted evidence that the decision-makers were unaware of the plaintiff's threat to file an EEOC charge); *McCollum v. Bolger*, 794 F.2d 602, 610-11 (11th Cir. 1986) (affirming judgment for defendant and holding that the plaintiff failed to prove a prima facie case of retaliation where evidence at trial showed that the decision maker did not know that the plaintiff was engaging in protected conduct).

In this case, Plaintiff has failed to meet his burden of establishing a causal link between his failure to be promoted to Sergeant and the Board's retaliatory animus based on Plaintiff's protected activity. Plaintiff has failed to submit any evidence that either of the three members of the Board knew that Plaintiff had engaged in any protected activity while employed as a police officer. By failing to present evidence of the Board's knowledge of Plaintiff's engagement in protected activities, Plaintiff has failed to satisfy

the causation element of a prima facie case of retaliation against the Board.

Furthermore, even if the Board knew of Plaintiff's protected activities, the previous discussion related to the lack of proximity between the protected activity and the adverse employment action would require Plaintiff to produce other evidence tending to show causation, which he has not done.  *See Higdon*, 393 F.3d at 1220.

Plaintiff has failed to introduce any evidence that could reasonably indicate that the Board's retaliatory animus influenced its decision to not promote him.  The record is clear that the Board made its decision based on the information it possessed at the hearings; therefore, summary judgment is due to be granted in favor of the Board.

C.    The City of Tuscaloosa.

Finally, Plaintiff claims that the City, along with the Board, retained control and authority over Plaintiff's employment such that they shared those matters governing many essential terms and conditions of Plaintiff's employment, including the promotion decisions.  (Doc. 52 at 35.)  Plaintiff makes it clear that he "is not basing his claims of retaliation against the City

of Tuscaloosa on respondeat superior." (Doc. 54 at 34.)  This indicates that Plaintiff's claims against the City are not based on the conduct of the members of the Promotion Panel, Chief Swindle, or any other agent or employee of the City.  He claims instead that his allegations against the City are based "on direct liability because the City had policy-making authority with which to decide whether to promote Huff."  *Id.*

This argument ignores the provisions of the Civil Service Act, which gives the Civil Service Board, not the City or any of its officials or employees, exclusive final decision-making authority regarding promotion decisions of employees subject to the Act.  When the state legislature created the Board, they expressly provided that its members would be appointed by the Governor of the State of Alabama, not the City of Tuscaloosa.  Plaintiff has failed to cite any evidence or law in support of his argument regarding the City's policy-making authority with respect to the promotion decisions.

Plaintiff has also failed to introduce any evidence that could reasonably indicate that the City's alleged discriminatory animus influenced the Board's decision not to promote him.  Plaintiff does not dispute that the City had no

policy, custom, or practice requiring or permitting retaliation.  Furthermore, Plaintiff offers no evidence that the City's Mayor or City Council ever harbored any retaliatory animus towards him, much less that they made the promotion decisions in question.  *See, e.g., Tucker*, 171 Fed. Appx. at 297-98 (holding that the School Board, which had final decision-making authority, was motivated by a retaliatory animus against the plaintiff).

Moreover, even if Plaintiff could establish retaliatory animus against the City, either independently or through an employee's actions, as discussed previously, the Board's independence would prevent liability from attaching to the City.

Based on this ruling, there is no need to address the remaining issues raised by Defendants.

V.     Conclusion.

For the reasons stated above, Defendants' Motions for Summary Judgment will be granted.  A separate order in conformity with this opinion will be entered.

Done this 22nd day of <u>October 2007</u>.

_____

L. SCOTT COOGLER

UNITED STATES DISTRICT JUDGE

151277